IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WOMEN'S LIBERATION FRONT,

      Plaintiff,

vs.

UNITED STATES DEPARTMENT OF JUSTICE;
LORETTA E. LYNCH, in her official capacity
as Attorney General of the United States;
VANITA GUPTA, in her official capacity as
Principal Deputy Assistant Attorney
General; UNITED STATES DEPARTMENT
OF EDUCATION; and JOHN B. KING, JR.,
in his official capacity as United States
Secretary of Education,

      Defendants.

## INTRODUCTION

This action arises out of Defendants' May 13, 2016 "Guidance document" mandating that every public school and university in the United States unconditionally admit men to women's bathrooms, locker rooms, changing rooms and other facilities, in violation of the Administrative Procedure Act, Title IX of the Educational Amendments of 1972, and the Fifth and Fourteenth Amendments to the Constitution.

## PARTIES

1. Plaintiff Women's Liberation Front ("WoLF") is an unincorporated association of radical feminists dedicated to the total liberation of women fighting to, among other things, end male violence, regain reproductive sovereignty for women, and preserve women-only spaces.  Defendants' actions injure WoLF because Defendants' policies will result in WoLF members having to share with men restrooms, locker rooms,

changing areas, and other private spaces that Congress mandated shall be exclusively for use by women.

2. Defendant United States Department of Justice ("DOJ") is an executive agency of the United States government and is responsible for the enforcement of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX"), and its implementing regulations.

3.  Defendant Loretta E. Lynch is the Attorney General of the United States, and is responsible for the operation and management of DOJ.  Defendant Lynch is sued in her official capacity only.

4. Defendant Vanita Gupta is Principal Deputy Assistant Attorney General at DOJ, and acting head of the Civil Rights Division of DOJ. She is responsible for enforcing Title IX. 28 C.F.R. § 42.412. She is sued in her official capacity only.

5. Defendant United States Department of Education ("DOE") is an executive agency of the United States government and is responsible for the administration and enforcement of Title IX, and promulgation, administration and enforcement of its implementing regulations.

6. Defendant John B. King, Jr., is the United States Secretary of Education and is responsible for the operation and management of DOE.  Defendant King is sued in his official capacity only.

JURISDICTION AND VENUE

7.  The Court has subject matter jurisdiction pursuant to 20 U.S.C. § 1683 and 28 U.S.C. §§ 1331, 1343, and 1361.

8.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the United States, several of its agencies, and several of its officers in their official capacity are Defendants and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

FACTS

Title IX

9.  Title IX provides, with specific exceptions, that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance".  20 U.S.C. § 1681.[1]

10.  Congress enacted Title IX (Pub. L. 92-318) in order to reverse decades of pervasive and invidious discrimination against women at every level of the U.S. educational system.

11. Title IX explicitly allows institutions to provide separate facilities for men and women, *e.g.*, "Notwithstanding anything to the contrary contained in this chapter, nothing contained herein shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686.  As Senator Birch Bayh, who had introduced this legislation, explained, "What we are trying to do is provide equal access for women and men

---

[1] Unless otherwise noted, Plaintiff uses the term "male," "female" and "sex" to indicate one's genetic sex as determined by one's chromosomes, birth anatomy, gametes, and reproductive system.  *See, e.g.*, Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 451 (5th ed. 2013) ("DSM-5") ("[S]ex and sexual refer to the biological indicators of male and female (understood in the context of reproductive capacity), such as in sex chromosomes, gonads, sex hormones, and nonambiguous internal and external genitalia.").

students to the educational process and the extracurricular activities in a school, where there is not a unique facet such as football involved. We are not requiring that intercollegiate football be desegregated, *nor that the men's locker room be desegregated.*" 117 Cong. Rec. 30407 (1971) (emphasis added).

12.  Senator Bayh was equally clear as to the scope of Title IX's grant of authority to federal agencies, "These regulations would allow enforcing agencies to permit differential treatment by sex only . . . such as in classes for pregnant girls or emotionally disturbed students, in sports facilities *or other instances where personal privacy must be preserved.*"  118 Cong. Rec. 5807 (1972) (emphasis added).

13. Congress knows full well how to extend federal protections based on gender identity, and uses just that phrase when doing so.  For example, in 2009 Congress included "gender identity" as one of the motivations that constituted a hate crime (Public Law 111-84; 18 U.S.C. § 249(a)(2)).  And in using "gender identity" for the first time, Congress did so as a separate, defined term: "the term 'gender identity' means actual or perceived gender-related characteristics."   16 U.S.C. § 249(c)(4).

14. In 2013 Congress added the term "gender identity" (and explicitly incorporating the definition in the 2009 statute) to the list of impermissible bases for discrimination under the Violence Against Women Act. Public Law 113-4; 42 U.S.C. § 13925(b)(13)(A). Congress could have amended the VAWA to define "sex" to include "gender identity". But Congress did not do so: once again, it *added* "gender identity" as a separate item *in addition to* "sex":

> No person in the United States shall, on the basis of actual or perceived race, color, religion, national origin, *sex, gender identity* (as defined in paragraph 249(c)(4) of title 18), sexual orientation, or disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

4

any program or activity funded in whole or in part with funds made available under the Violence Against Women Act of 1994 [etc.].   42 U.S.C. § 13925(b)(13)(A)(emphases added).

And immediately after subsection (b)(13)(A) came subsection (b)(13)(B), entitled "Exception":

If sex segregation or sex-specific programming is necessary to the essential operation of a program, nothing in this paragraph shall prevent any such program or activity from consideration of an individual's sex. In such circumstances, grantees may meet the requirements of this paragraph by providing comparable services to individuals who cannot be provided with the sex-segregated or sex-specific programming.

Thus, Congress could not have been any clearer that the term "gender identity", did *not* mean the same thing as "sex".

15.  In addition to its positive enactments, Congress has repeatedly affirmed that "sex" as used in Title IX means *only* biological sex, as evidenced by repeated attempts to expand the protections of Title IX and other civil rights laws to include various formulations beyond biological "sex".  For example, in 2013 and 2015, proposals were specifically made to add "gender identity" to Title IX as a protected category. H.R. 1652, 113th Cong. (2013); S.439, 114th Cong. (2015). Each of these proposals was based on the explicit understanding that as used in Title VII, Title IX, and other civil rights laws that "sex," as a protected class, referred only to biological sex: "While federal civil rights statutes clearly address discrimination on the basis of race, color, sex, religion, disability, and national origin, they do not explicitly include sexual orientation or gender identity."  Statement of Senator Al Franken, sponsor of S.439.

16. Congress rejected each of these attempts to add "gender identity" protections to the various civil rights laws, including Title IX.

DOE's Title IX Regulations

17. DOE has promulgated and amended its Title IX regulations seven times since it was enacted in 1972.  Not once, in any regulatory preamble, did DOE even mention the concept of "gender identity", let alone equate it with the term "sex" as used either in the statute or in DOE's own regulations.  See, 45 FR 30955, May 9, 1980; 45 FR 37426, June 3, 1980; 45 FR 86298, Dec. 30, 1980; 47 FR 32527, July 28, 1982; 65 FR 68056, Nov. 13, 2000; 71 FR 62530, October 26, 2006; 71 FR 62542, October 25, 2006.

18. DOE's own regulations recognize the binary nature of "sex", *e.g.*, that separate, sex-segregated "toilet, locker room, and shower facilities" are appropriate, so long as "such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex" (34 C.F.R. § 106.33) and "A recipient may make preemployment inquiry as to the sex of an applicant for employment, but only if such inquiry is made equally of such applicants of both sexes and if the results of such inquiry are not used in connection with discrimination prohibited by this part" (34 C.F.R. § 106.60(b)).

19. Indeed, DOE explicitly recognizes that sex is a bona-fide occupational qualification in terms of who may be employed in locker rooms and toilet facilities:

> A recipient may take action otherwise prohibited by this subpart provided it is shown that sex is a bona-fide occupational qualification for that action, such that consideration of sex with regard to such action is essential to successful operation of the employment function concerned. A recipient shall not take action pursuant to this section which is based upon alleged comparative employment characteristics or stereotyped characterizations of one or the other sex, or upon preference based on sex of the recipient, employees, students, or other persons, *but nothing contained in this section shall prevent a recipient from considering an employee's sex in relation to employment in a locker room or toilet facility used only by members of one sex.*

34 C.F.R. § 106.61 (emphasis added).

The May 13 Guidance

20. Notwithstanding the undisturbed understanding that both Congress in its statutes and DOE in its regulations did not mean "sex" to include "gender identity", on May 13, 2016, Defendants issued "guidance" that summarizes, "a school's Title IX obligations regarding transgender students and explains how the U.S. Department of Education (ED) and the U.S. Department of Justice (DOJ) evaluate a school's compliance with these obligations" (the "May 13 Guidance").  21. The May 13 Guidance announced that Title IX's prohibition of sex discrimination also "encompasses discrimination based on a student's gender identity, including discrimination based on a student's transgender status".   The May 13 Guidance mandates that, "Unless expressly authorized by Title IX or its implementing regulations, a school may not segregate or otherwise distinguish students on the basis of their sex, including gender identity, in any school activities or the application of any school rule."

22. Of specific concern to WoLF is the May 13 Guidance's requirement that for restrooms and locker rooms, "A school may provide separate facilities on the basis of sex, but must allow transgender students access to such facilities consistent with their gender identity."

23. According to the May 13 Guidance, "when a student or the student's parent or guardian, as appropriate, notifies the school administration that the student will assert a gender identity that differs from previous representations or records, the school will begin treating the student consistent with the student's gender identity."  The May 13 Guidance does not state when it is "appropriate" for a guardian -- as opposed to the student -- to make this notification, nor what form this notification must take.  Nor does

the May 13 Guidance place any temporal bounds on such notification: A student is utterly free to change such "gender identity" on a daily – or even hourly – basis.

24. Even more frightening – if possible -- the May 13 Guidance *does not require any notification at all to the school for school administrators, teachers, or visitors to use facilities consistent with their "gender identity"*.  Without even notice to the women and girls who use a school or university restroom, locker room, etc., with the stroke of a pen Defendants have now mandated that men are simply free to use those places.

25. By equating "sex" with "gender identity", the May 13 Guidance overturned the express language of Title IX, the intent and expectation of Congress as set out in Title IX, and the language and intent expressed in the Title IX regulations that "sex" exclusively meant biological sex.   Moreover, the May 13 Guidance does this without citing to an administrative record or any other factual support or evidence, or indeed, giving any explanation at all of how Defendants reached the conclusion that "sex" is the same as "gender identity".  Defendants' unilateral decree that women are not, as has been understood since the dawn of time, people who are biologically female, but anyone who, for any reason or no reason at all, choose to so describe themselves at any given time, is an arbitrary and breathtakingly irresponsible action that denies every female's biological and social reality.

The Impact of the May 13 Guidance on WoLF's Members

26.  AB is 15 years old, and attends a public school in New Mexico.[2]  AB has been a WoLF member since June, 2016.  AB's parent ("AB's Mother") has been a WoLF member since February, 2015.

27. According to DOE, New Mexico elementary and secondary schools received approximately $355 million in federal funding in 2015, and DOE estimates that they will receive approximately $368 million in such funding in 2016.  AB's school reports that it receives federal funding "every year".

28. Because of AB's school federal funding, Defendants insist that AB's school implement the May 13 Guidance or face legal sanctions.  On information and belief, AB's school will implement the May 13 Guidance, or be ordered to implement the May 13 Guidance by appropriate New Mexico education officials, in order to avoid loss of those federal funds.

29. Because the May 13 Guidance allows any male student (based solely on a declaration that he "identifies" as female), and any male teacher, administrator, or visitor completely free, unfettered and unsupervised access to women's restrooms, locker rooms, or other areas (such as overnight accommodations and theatrical changing rooms), both AB and AB's Mother have a well-founded fear that AB will be compelled to share such facilities with people who are biologically male.

30. Because of her biology and bodily functions, AB has different requirements for, and expectations of, privacy and safety in restrooms, locker rooms, changing rooms, etc., as

---

[2] "AB" are not her actual initials; use of her actual initials would place her privacy and personal security at risk.

compared to men.  As a female she is more vulnerable to assault or rape (including impregnation) when she is in isolated or closed areas with men.  As a result, AB and AB's Mother value the privacy and safety offered by restrooms, changing rooms, locker rooms, and other spaces specifically designated for women.

31. The May 13 Guidance has materially increased AB's risk of such assault not only by allowing men free and unfettered access to these spaces, but also by essentially repealing the New Mexico criminal statutes that protect women in these places and providing a complete defense for any man who previously would have been guilty of either "Indecent exposure" ("knowingly and intentionally exposing his primary genital area to public view" (NMS 30-9-14(A)), or  "Voyeurism" ("to view . . . the intimate areas of another person without the knowledge and consent of that person . . . while the person is in the interior of a bedroom, bathroom, changing room, fitting room, dressing room or tanning booth or the interior of any other area in which the person has a reasonable expectation of privacy" (NMS 30-9-20(A)(1)).

32.  AB and AB's Mother do not want men sharing such facilities with AB.  They fear not only the increased risk of sexual assault on AB, but the embarrassment, humiliation, anxiety, and loss of personal dignity because they will have to share such intimate spaces with men while in various stages of undress.  Each of AB's injuries is imminent, traceable to the May 13 Guidance and redressable by this Court.

33. AB's Mother attends a public university in New Mexico.

34. According to DOE, New Mexico post-secondary educational institutions received approximately $205 million in federal funding in 2015, and DOE estimates that they will

receive approximately $203 million in 2016. AB's Mother's university reports receiving millions of dollars of that federal funding in 2015.

35.   Because of this federal funding, Defendants insist that the university implement the May 13 Guidance or face legal sanctions.  On information and belief, AB's Mother's university will implement the May 13 Guidance, or be ordered to implement the May 13 Guidance by appropriate New Mexico education officials, in order to avoid loss of those federal funds.

36. Because the May 13 Guidance allows any male student (based solely on a declaration that he "identifies" as female), and any male teacher, administrator, or visitor completely free, unfettered and unsupervised access to women's restrooms, locker rooms, or other areas (such as theatrical changing rooms) AB's Mother has a well-founded fear that she will be compelled to share such facilities with people who are biologically male.

37. Because of her biology and bodily functions, AB's Mother has different requirements for, and expectations of, privacy and safety in restrooms, locker rooms, changing rooms, etc., as compared to men.  As a female she is more vulnerable to assault or rape (including impregnation) when she is in isolated or closed areas with men.  As a result, AB's Mother values the privacy and safety offered by restrooms, changing rooms, locker rooms, and other spaces specifically designated for women.

38. The May 13 Guidance has materially increased AB's Mother's risk of such assault not only by allowing men free and unfettered access to these spaces, but also by essentially repealing New Mexico criminal statutes that protect women in these places

and providing a complete defense for any man who previously would have been guilty of either "Indecent exposure" (NMS 30-9-14(A)), or "Voyeurism" (NMS 30-9-20(A)(1)).

39. AB's Mother does not want men sharing such facilities with her.  She fears not only the increased risk of sexual assault, but the embarrassment, humiliation, anxiety, and loss of personal dignity that she will endure because she will have to share such intimate spaces with men while in various stages of undress. Each of AB's Mother's injuries is imminent, traceable to the May 13 Guidance and redressable by this Court.

## CLAIMS FOR RELIEF

### COUNT ONE
Violation of the Administrative Procedure Act:
Rulemaking Without Required Procedure

40. Plaintiff repeats and realleges paragraphs 1-39 as if fully set forth herein.

41. The May 13 Guidance is final agency action in the form of a legislative rule that Defendants adopted without the required notice and comment procedure required by 5 U.S.C. § 553, and thus was thus agency action taken without observance of procedure required by law, in violation of 5 U.S.C. § 706(2)(D).

### COUNT TWO
Violation of the Administrative Procedure Act:
Agency Action in Excess of Statutory Authority

42. Plaintiff repeats and realleges paragraphs 1-41 as if fully set forth herein.

43. By compelling women to share restrooms, locker rooms, and other similar areas with men, the May 13 Guidance is final agency action that violates the express terms, plain meaning and legislative intent of Title IX, which is to provide women with their own facilities, and was thus promulgated in excess of statutory authority and limitations, in violation of 5 U.S.C. § 706(2)(C).

## COUNT THREE
Violation of the Administrative Procedure Act:
Agency Action in Excess of Statutory Authority

44. Plaintiff repeats and realleges paragraphs 1- 43 as if fully set forth herein.

45. By expanding the scope of the term "sex" as used in Title IX and its implementing regulations beyond the biological definition of "sex" by equating "sex" with "gender identity", the May 13 Guidance is final agency action that is contrary to the express terms, and plain meaning, of the statute and was thus promulgated in excess of statutory authority and limitations in violation of 5 U.S.C. § 706(2)(C).

## COUNT FOUR
Violation of the Administrative Procedure Act:
Arbitrary and Capricious Agency Action

46. Plaintiff repeats and realleges paragraphs 1-45 as if fully set forth herein.

47. Because there is no factual record or other basis from which Defendants could conclude that "sex" is the same as "gender identity", the May 13 Guidance is arbitrary and capricious final agency action in violation of 5 U.S.C. § 706(2)(A).

## COUNT FIVE
Violation of the Administrative Procedure Act:
Agency Action in Excess of Statutory Authority

48. Plaintiff repeats and realleges paragraphs 1-47 as if fully set forth herein.

49. New Mexico criminal law makes both "Indecent exposure" ("knowingly and intentionally exposing his primary genital area to public view" (NMS 30-9-14(A)), and "Voyeurism" ("to view . . . the intimate areas of another person without the knowledge and consent of that person . . . while the person is in the interior of a bedroom, bathroom, changing room, fitting room, dressing room or tanning booth or the interior of

any other area in which the person has a reasonable expectation of privacy" (NMS 30-9-20(A)(1)) crimes.

50. By mandating that biological males be given free and unfettered access to women's private spaces (including the very spaces listed in the Voyeurism statute), the May 13 Guidance is final agency action that overrides New Mexico criminal law, creates an absolute defense to any criminal charges under these statutes, and deprives WoLF's members of the protection of these laws.  Because nothing in Title IX allows Defendants to do so, the May 13 Guidance was thus promulgated in excess of statutory authority and limitations, 5 U.S.C. § 706(2)(C).

COUNT SIX
Violation of the Fifth and Fourteenth Amendments:
Violation of the Constitutional Guarantees of Bodily Privacy

51.  Plaintiff repeats and realleges paragraphs 1-50 as if fully set forth herein.

52.  The Fifth and Fourteenth Amendments guarantee certain fundamental rights, including the right to bodily privacy.

53.  By mandating that schools must allow men access to women's restrooms, locker rooms, changing rooms, and similar spaces reserved for women, Defendants have violated the Fifth Amendment's guarantee of the fundamental right to bodily privacy and are compelling the State of New Mexico to violate the Fourteenth Amendment's guarantee of the fundamental right to bodily privacy.

PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

A. Declare that the May 13 Guidance was agency action taken without observance of procedure required by law;

14

B. Declare that the May 13 Guidance was agency action promulgated in excess of statutory authority and limitations;

C.  Declare that the May 13 Guidance violates the Fifth and Fourteenth Amendments' guarantees of the fundamental right to bodily privacy;

D. Temporarily and permanently enjoin the Defendants from implementing, applying, or enforcing the May 13 Guidance;

E. Award Plaintiff its attorneys' fees and litigation expenses; and

F. Award any other relief this Court finds just and proper.

Respectfully submitted,


/s/ David Bookbinder

_____
David Bookbinder
Lead Counsel for Plaintiff
Law Offices of David Bookbinder, PLLC
107 S. West Street, Suite 491
Alexandria, VA 22314


/s/ Ray Twohig

_____
Ray Twohig,
Local Counsel for Plaintiff
8998 Rio Grande Blvd., N.W.
Albuquerque, NM  87114
Phone: 505/898-0400